UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-61122-CIV-COHN/SELTZER

THE CITY OF FORT LAUDERDALE,

    Plaintiff,

v.

HEZZEKIAH SCOTT,

    Defendant/Counter-claimant,

VIRGIL BOLDEN, GLORIA BURNELL, THE ESTATE
OF WALTER TIRSCHMAN and KAREN MCNAIR,

    Counter-Plaintiffs/Third Party Plaintiffs,

v.

THE CITY OF FORT LAUDERDALE,

    Counter-defendant,

ALFRED G. BATTLE, JR., Director of Community
Redevelopment Agency, in his official and individual
capacities, SHAUN DONOVAN, in his official
capacity as Secretary of United States Department
of Housing and Urban Development, and UNITED
STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

    Third-Party Defendants.
_____/

**ORDER GRANTING FEDERAL COUNTER-DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon the Federal Counter-Defendants' Motion to Dismiss Second Amended Counterclaim Class Action [DE 23] and Memorandum in Support [DE 24], the Counter-Plaintiffs' Response [DE 65], the Federal Counter-Defendants' Reply [DE 77], the Federal Counter-Defendants' Motion to Strike Jury Trial

[DE 26] and Memorandum [DE 27], Counter-Plaintiffs' Response [DE 63], Counter-Defendants' Reply [DE 76], and the Federal Counter-Defendants' Motions to Stay [DE 31] and to Vacate Scheduling Order [DE 39]. The Court has considered all of the filings in this case, and is otherwise fully advised in the premises.

## I.  BACKGROUND

This case originated in the Circuit Court in and for Broward County, Florida as an action by the City of Fort Lauderdale ("City") to foreclose a Special Master Order and Claim of Lien on un-homesteaded real property owned by Defendant/Counter-Plaintiff Hezzekiah Scott. Although the state court filings are not all part of the docket in this court, the City states that Scott and four other property owners (hereinafter "Counter-Plaintiffs") filed an Amended Counterclaim asserting various claims, to which the City filed a Motion to Dismiss. After only a few issues were resolved by the state court after a partial hearing, Counter-Defendants Shaun Donovan, as Secretary of the United States Department of Housing and Urban Development ("HUD"), and HUD itself (hereinafter "Federal Counter-Defendants"), removed this action before a further hearing on the remaining issues in the City's state court motion.

After removal, Counter-Plaintiffs filed a Second Amended Counterclaim ("Counterclaim"), containing twenty counts against the City, Alfred Battle, Director of the City's Community Redevelopment Agency, and the Federal Counter-Defendants [DE 12]. In general, the Counterclaim alleges that the City and Battle engaged in unconstitutional code enforcement operations in the Northwest portion of the City of Fort Lauderdale against Black property owners to obtain their property through a fine and

foreclosure scheme, fraudulently obtained federal funds by certifying to HUD that the City was complying with HUD's mandates to use the funds to help low and middle income families obtain housing, and then using the federal funds to redevelop the Northwest portion to the benefit of high-end developers.  Counterclaim, ¶¶ 42-61.  In addition to state common law claims of fraud, nuisance and slander of title, the Counterclaim alleges that the City violated the Fifth and Fourteenth Amendments to the United States Constitution by denying Counter-Plaintiffs their rights of substantive due process, procedural due process and equal protection.  Counter-Plaintiffs further allege various violations of the federal Fair Housing Act against both the City and the Federal Defendants, and violations of the Florida statutes governing code enforcement against the City.  The claims against the Federal Counter-Defendants can largely be summarized by allegations of HUD's failure to exercise oversight of the City's allegedly unlawful actions.  See Counts XII, XIII, XVI, XVII, and XIX.  Counter-Plaintiffs further allege that the City violated a prior settlement agreement in a related case, Velva Tuner, et al. v. City of Fort Lauderdale, Case No. 06-61635-Civ-Ungaro [DE 101-2 in that case].

     Both the Federal Counter-Defendants and the City have moved to dismiss the Second Amended Counterclaim, while the Counter-Plaintiffs have moved to certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure.  All Counter-Defendants have moved to stay discovery, while the Federal Counter-Defendants have also moved to strike the jury demand.  This Order will only consider the issues raised by the Federal Counter-Defendants.

## II.  DISCUSSION

### A.  Motion to Dismiss – Lack of Standing

The Federal Defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the Second Amended Counterclaim on the grounds that Counter-Plaintiffs lack Article III standing to sue, that the Court lacks jurisdiction because sovereign immunity bars the claims, and for failure to state a claim.  Counter-Plaintiffs would have standing to sue the Federal Counter-Defendants if they: (1) have suffered an injury in fact; (2) the injury was causally connected to Counter-Defendants' action; and (3) it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561(1992) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).  The Federal Defendants focus their standing argument on the issue of redressability.[1]  Under Rule 12(b)(1), the Court is not necessarily limited to the four corners of the Counterclaim, but may consider undisputed facts evidenced in the record.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

The Federal Defendants contend that even if Counter-Plaintiffs obtained a favorable decision as to HUD, redress will depend upon the independent policy decisions of the City of Fort Lauderdale.  The United States Court of Appeals for the

---

[1] At some point in their argument, the Federal Counter-Defendants allege a lack of a causal connection between HUD's actions and the alleged harm to Counter-Defendants.  There are no allegations in the Second Amended Counterclaim that HUD took action to approve the code enforcement scheme undertaken by the City, nor whether HUD funds were used.  However, Counter-Plaintiffs assert, in their brief, that "Two code enforcement inspectors were hired with CDBG funds."  Because this factual allegation is not in the Counterclaim, it cannot support Counter-Plaintiffs' arguments against dismissal of their claims.

District of Columbia has held at least twice that where redress "depends largely on policy decisions yet to be made by government officials," standing is lacking, despite the existence of injury.  Miami Bldg. & Const. Trades Council, AFL/CIO v. Secretary of Defense, 493 F.3d 201, 205-06 (D.C. Cir. 2007) (quoting US Ecology Inc. v. U.S. Dept. of Interior, 231 F.3d 20, 24-25 (D.C. Cir. 2000)).  In both cited cases, the plaintiffs were attempting to force a federal agency to transfer title of land to a state or local government for the construction of a particular project that had previously been agreed to by the local authority.  In each case, the Circuit Court of Appeals held that because such a transfer had to be independently accepted by the state or local government, and at the time of litigation such acceptance had been rejected, it was not likely that a favorable decision for plaintiffs against the federal agency would result in redress.  In the case at bar, Counter-Plaintiffs seek damages, as well as injunctive relief to change the way in which the City uses federal funds.

Counter-Plaintiffs argue that the Federal Counter-Defendants have engaged in circular reasoning by merging the doctrines of redressability (standing) and waiver of sovereign immunity (jurisdiction).  Counter-Plaintiffs' Response at 7 [DE 65].  They cite to Gautreaux v. Romney, 448 F.2d 721 (7th Cir. 1971), which reversed a dismissal of an action against the Secretary of HUD for HUD's role in approving and funding a racially discriminatory public housing system.  The Seventh Circuit decision did not discuss standing, and only mentioned in passing that sovereign immunity does not bar challenging "alleged unconstitutional and unauthorized conduct by a federal officer." 448 F.2d at 735; Smith v. Housing Authority of South Bend, – F. Supp.2d –, 2010 WL 3927572 (N.D. Ind. 2010).  There is no allegation in the Counterclaim that Defendant

5

Donovan, HUD Secretary and a federal officer, had knowledge of the City's alleged actions.

Moreover, Gautreaux retains limited precedential value as it pertains to the redressability issue, as Congress changed the Housing and Community Development Act in 1974 to one in which HUD makes grants, known as Community Development Block Grants ("CDBG") to states, tribes and local governments to carry out projects in accordance with the Act.  Dixson v. U.S., 465 U.S. 482, 486 (1984) ("Congress enacted the legislation as a federal block grant statute, under which the day-to-day administration of the federal program, including the actual expenditure of federal funds, is delegated to State and local authorities.")  The Federal Counter-Defendants assert correctly that HUD's role in policing the use of CDBG funds by the City is limited by statute and regulation.  See 24 C.F.R. ¶ 91.500 (and statutes cited therein).  HUD must give "maximum feasible deference" to a state's interpretation of the statutory requirements to spend CDBG funds.  24 C.F.R. ¶ 570.480.  HUD's enforcement power is limiting to conducting an Audit, and referral to the Department of Justice to bring a civil action to recover misspent CDBG funds.  42 U.S.C. §5304(e); 42 U.S.C. § 5311(b). Thus, even if the Court had jurisdiction to rule in favor of Counter-Plaintiffs and against the Federal Defendants, the City makes all decisions regarding the use of the federal CDBG funds at issue.

Counter-Plaintiffs contend that "[i]f HUD had dealt with the City's improper use of CDBG funds in a timely manner, the probability that Counter-Plaintiff and Plaintiffs would have been harmed by the City would have been significantly decreased or already redressed."  Counter-Plaintiffs' Response at 9.  This conclusory argument in

6

Counter-Plaintiffs' brief, even if alleged in the Counterclaim, does not make it more likely that the Counter-Plaintiffs would obtain redress from a favorable decision against the Federal Counter-Defendants.  As alleged in the Counterclaim, HUD did in fact conduct an audit of the City's use of funds in 2008.  The Audit resulted in thirteen recommendations, and included a direction from HUD to the City to repay hundreds of thousands of dollars to HUD.  The decision of HUD whether to conduct an audit or refer action to the Department of Justice is committed to the discretion of HUD.  42 U.S.C. § 5311(b).

      The Court concludes that Counter-Plaintiffs have failed to show that it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision against the Federal Counter-Defendants as to any form of prospective injunctive relief because HUD lacks the authority to direct the City to spend federal funds in a particular manner.  Therefore, Counter-Plaintiffs lack standing to sue Secretary Donovan and HUD.

### B.  Motion to Dismis – Jurisdiction

      Even if Counter-Plaintiffs had standing, the Court lacks subject matter jurisdiction to hear the claims against the Federal Counter-Defendants because sovereign immunity precludes the claims.  In general, the United States must consent to be sued, with a limited exception for constitutional claims against federal officers.  Hercules, Inc. v. U.S., 516 U.S. 417, 422 (1996).  The United States has not waived its immunity to suit under the provisions of the civil rights statutes and the Fifth Amendment.  U.S. v. Timmons,

672 F.2d 1373, 1380 (11th Cir. 1982).[2]  In this case, Counter-Plaintiffs seek a wide variety of relief, including both compensatory and punitive damages as well as various forms of equitable relief.

Counter-Plaintiffs contend that a waiver can be found in the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.  The provision states that:  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  The Federal Counter-Defendants argue that an alternate remedy is available – a lawsuit against the City.  At least two Circuit Courts of Appeal have held that such a remedy is particularly appropriate where the allegations are that the federal agency has failed to act as alleged in the Counterclaims.  American Disabled for Attendant Programs Today v. U.S. Dept. of Housing and Urban Dev., 170 F.3d 381, 389-90 (3rd Cir. 1999); Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990); see also Turner v. Secretary of U.S. Dept. of Housing and Urban Dev., 449 F.3d 536, 539-41 (3rd Cir. 2006).

The Federal Counter-Defendants further assert that the APA's limited waiver is inapplicable here because HUD's enforcement of the use of CDBG funds is committed to agency discretion by law.  In Heckler v. Chaney, 470 U.S. 821, 831 (1985), the United States Supreme Court stated that a presumption exists *against* judicial review in

---

[2]  It is clear that Defendant Shaun Donovan is only being sued in his official capacity as Secretary of HUD, and is not alleged to have personally done anything unconstitutional.  Plaintiff's reliance on Ex-parte Young, 209 U.S. 123 (1908) is inapposite, as that decision made an exception to Eleventh Amendment immunity for lawsuits against a State officer acting in an unconstitutional manner.

cases involving an agency's refusal to take requested enforcement action. Copeland v. U.S., 622 F.Supp.2d 1347, 1351 (S.D. Fla. 2008). The Court agrees with the Federal Counter-Defendants that there is no substantive statute which provides explicit guidelines to the agency regarding the circumstances under which the agency must exercise its enforcement powers. In this case, HUD retained the discretion whether to take enforcement action. 42 U.S.C. § 5304(e); 42 U.S.C. § 5311(a)(2).

The Federal Counter-Defendants also seek to dismiss Count XII, a claim that HUD violated 42 U.S.C. § 3608(e)(5) by failing to administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of the Fair Housing Act. Again, the Federal Counter-Defendants assert that there is no statutory mandate requiring HUD to take discrete action, and therefore no judicial review available. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004). Counter-Plaintiffs' response merely quotes from the statutory language. However, this Court is bound by the Court decisions that govern and limit judicial review of federal agency actions.

With regard to the claim in Count XVII for breach of the agreement between the City and HUD, the Federal Counter-Defendants assert that because it is a claim for money damages, judicial review under the APA is not available. 5 U.S.C. § 702. Counter-Plaintiffs contend that their claim for restitution is not one for money damages. Whether or not that is legally correct, the relief sought would involve the payment of

money to Counter-Plaintiffs.  There is no jurisdiction to bring such a claim against the Federal Counter-Defendants.[3]

Finally, as to Count XIX, which does not specify as to which Counter-Defendants it pertains, Counter-Plaintiffs assert that the Federal Counter-Defendants failed to address this claim and have therefore waived its defenses.  However, in its reply, the Federal Counter-Defendants correctly note that they moved to dismiss all claims for lack of standing and jurisdiction.  This particular claim for an implied right of action under the Fair Housing Act alleges the same "failed to . . . supervise" language present in other claims.  Second Amended Counterclaim, ¶ 137.  The Court concludes that Plaintiffs lack standing to assert this claim and the Court lacks jurisdiction to hear the claim as to the Federal Counter-Defendants.

### III.  CONCLUSION

For the reasons expressed above, Counter-Plaintiffs lack standing to sue the Federal Counter-Defendants, and this Court lacks jurisdiction to hear the claims alleged in the Second Amended Counterclaim against the Federal Counter-Defendants.

 Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Federal Counter-Defendants' Motion to Dismiss Amended Counterclaim Class Action [DE 23] is hereby **GRANTED**;

2. Counter-Defendants Shaun Donovan, as Secretary of HUD, and HUD itself, are hereby **DISMISSED** from this action;

---

[3] The Federal Counter-Defendants also argue that the Second Amended Counterclaim fails to match up its various remedies stated in the "Prayer for Relief" with any of the twenty claims.  Therefore, it is difficult for any counter-defendant to know which form of relief is being sought under which claim.

3. Federal Counter Defendants' Motion to Strike Jury Trial [DE 26], Federal Counter-Defendants' Motion to Stay [DE 31] and Motion to Vacate Scheduling Order [DE 39] are hereby **DENIED as moot**;

4. The Court will address the remaining pending motions in a separate order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 19th day of January, 2011.

_____
JAMES I. COHN
United States District Judge

cc: All counsel of record on CM/ECF