UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-61122-CIV-COHN/SELTZER

THE CITY OF FORT LAUDERDALE,

      Plaintiff,

v.

HEZZEKIAH SCOTT,

      Defendant/Counter-claimant,

VIRGIL BOLDEN, GLORIA BURNELL, THE ESTATE
OF WALTER TIRSCHMAN and KAREN MCNAIR,

      Counter-Plaintiffs/Third Party Plaintiffs,

v.

THE CITY OF FORT LAUDERDALE,

      Counter-defendant,

ALFRED G. BATTLE, JR., Director of Community
Redevelopment Agency, in his official and individual
capacities, SHAUN DONOVAN, in his official
capacity as Secretary of United States Department
of Housing and Urban Development, and UNITED
STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

      Third-Party Defendants.

_____/

## ORDER GRANTING FEDERAL COUNTER-DEFENDANTS' MOTION TO DISMISS and GRANTING LEAVE TO FILE AN AMENDED COUNTERCLAIM

**THIS CAUSE** is before the Court upon Alfred Battle and the City of Fort

Lauderdale's ("City") Motion to Dismiss [DE 29], the Counter-Plaintiffs' Response [DE

64], the Counter-Defendants' Reply [DE 78], Counter-Plaintiffs' Motion to Certify Class

[DE 16], the Counter-Defendants' Responses [DE 38], Counter-Plaintiffs' Replies [DE

57 and 62], the City's Motion to Enforce State Court Stay [DE 43], Counter-Plaintiffs'

Response to Motions to Stay [DE 55], the City's Reply [DE 60], Counter-Plaintiffs'

Motion to Strike a Portion of Reply [DE 70], the City's Response to the Motion to Strike

[DE 82], Counter-Plaintiffs' Motion to Amend Scheduling Order [DE 71], the City's

Response [DE 83], Counter-Plaintiffs' Motion to Allow Interim Discovery [DE 84], the

City's Response [DE 87] and Counter-Plaintiffs' Reply [DE 88].  The Court has

considered all of the filings in this case, and is otherwise fully advised in the premises.

## I.  BACKGROUND

This case originated in the Circuit Court in and for Broward County, Florida, as

an action by the City of Fort Lauderdale ("City") to foreclose a Special Master Order and

Claim of Lien on non-homestead real property owned by Defendant/Counter-Plaintiff

Hezzekiah Scott.  Although the state court filings are not all part of the docket in this

Court, the City states that Scott and four other property owners (hereinafter "Counter-

Plaintiffs") filed an Amended Counterclaim asserting various claims, to which the City

filed a Motion to Dismiss.  After only a few issues were resolved by the state court after

a partial hearing, Counter-Defendants Shaun Donovan, as Secretary of the United

States Department of Housing and Urban Development ("HUD"), and HUD itself

(hereinafter "Federal Counter-Defendants"), removed this action before a further

hearing on the remaining issues in the City's state court motion.

After removal, Counter-Plaintiffs filed a Second Amended Counterclaim

("Counterclaim"), containing twenty counts against the City, Alfred Battle, Director of the

City's Community Redevelopment Agency, and the Federal Counter-Defendants [DE 12]. In general, the Counterclaim alleges that the City and Battle engaged in unconstitutional code enforcement operations in the Northwest portion of the City of Fort Lauderdale against Black property owners to obtain their property through a fine and foreclosure scheme, fraudulently obtained federal funds by certifying to HUD that the City was complying with HUD's mandates to use the funds to help low and middle income families obtain housing, and then using the federal funds to redevelop the Northwest portion to the benefit of high-end developers. Counterclaim, ¶¶ 42-61. By separate order, this Court dismissed the claims against the Federal Counter-Defendants for lack of standing and lack of subject matter jurisdiction [DE 91].

The Counterclaim alleges that the City violated the Fifth and Fourteenth Amendments to the United States Constitution by denying Counter-Plaintiffs their rights of substantive due process, procedural due process and equal protection (Section 1983 claims); that the City violated various provisions of the federal Fair Housing Act and Florida statutes governing code enforcement; that the City committed the common law torts of fraud, nuisance and slander of title; and that the City violated a prior settlement agreement in a related case, Velva Turner, et al. v. City of Fort Lauderdale, Case No. 06-61635-Civ-Ungaro [DE 101-2 in that case]. The City has moved to dismiss the Second Amended Counterclaim, while the Counter-Plaintiffs have moved to certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. All Counter-Defendants have moved to stay discovery, while the Counter-Plaintiffs have sought permission to take discovery.

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

Under the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S.

544 (2007), to survive a motion to dismiss, a complaint must now contain factual

allegations which are "enough to raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."  550 U.S. at 555.   "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Id.  Taking the

facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of action."

Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir.

1993).  In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), the Supreme Court further

stated that a court need not accept legal conclusions as true, but only well-pleaded

factual allegations are entitled to an assumption of truth.

A pleading must also comply with Fed. R. Civ. P. 8(a)(2) by setting forth a "short

and plain statement of the claim showing that the pleader is entitled to relief," and with

Fed. R. Civ. P. 10(b), which requires a plaintiff to have only one claim per count in a

complaint.  Anderson v. District Board of Trustees of Central Florida Community

College, 77 F.3d 364, 366-67 (11th Cir. 1996).  These rules ensure due process with

proper notice to each defendant as to what claims are actually being alleged against

each defendant.

## B.  Procedural Bars

### 1.  Res Judicata

The City argues that Counter-Plaintiffs' claims are barred by the doctrine of res judicata because they did not appeal the code enforcement fines or challenge the code enforcement process when those fines were levied in administrative actions.  There is no factual dispute that Counter-Plaintiffs did not file appeals or pursue additional administrative remedies.  In fact, Counter-Plaintiffs allege that as to certain Counter-Plaintiffs, they did not attend the hearings and were not informed of any rights to appeal.[1]

Counter-Plaintiffs instead argue that under Florida law they were unable to file constitutional claims in an administrative code enforcement proceeding, and therefore, that proceeding could not act as res judicata, relying upon Wilson v. County of Orange, 881 So. 2d 625 (Fla. Dist. Ct. App. 2004).  In Wilson, a trailer park owner filed an action asserting a § 1983 claim for Fifth Amendment and Eighth Amendment violations and three claims attacking the facial constitutionality of various code enforcement statutes and ordinances.  881 So.2d at 628.  The District Court of Appeal reversed the lower court's granting of a motion to dismiss, allowing the claims to go forward.  As to the § 1983 claim, the Court did not even consider the arguments that res judicata or failure to exhaust administrative remedies precluded such an action.  Rather, as to the claims

---

[1]  Counter-Plaintiffs further allege that an official of the City threatened them with arrest if they did not comply with the code enforcement operations or protested those operations.

attacking the constitutionality of the relevant statutes, the Court held that the plaintiff had the right to challenge the constitutionality of statutes by filing a separate declaratory action in circuit court.

Applying Wilson to the case at bar, Counter-Plaintiffs have not alleged a facial constitutional challenge to code enforcement ordinances. Rather, they primarily allege § 1983 claims against the City for the manner in which code enforcement actions were taken, akin to the first claim in the Wilson action.[2] Thus, the City's attempt to distinguish Wilson by pointing out that Counter-Plaintiffs failed to file a declaratory action misses the mark – the relevance of Wilson is allowing the similar § 1983 claims to go forward. Neither res judicata nor collateral estoppel bar the claims in this action.

## 2.  Florida Statutory Notice Provision

The City contends that Counter-Plaintiffs have failed to allege compliance with the presuit, statutory notice provision contained in Florida Statutes § 768.28(6)(a). The City acknowledges that Counter-Plaintiffs sent such notices (Exhibit C to Motion to Dismiss – DE 29-3), but argue that the notices are insufficient because they lack the dates of when the alleged conduct of the City occurred. The Notices do state that injuries were suffered because of the City's imposition of excessive fines for the sole purpose of depriving them of their property by foreclosure and demolition, and that the constitutional claims are based upon § 1983, with additional claims for slander of title and nuisance. Under federal law, the presuit notice requirement does not apply to §

---

[2]   Counts II, III, XII, XIV, and XV are all Section 1983 claims.

1983 claims, Majette v. O'Connor, 811 F.2d 1416, 1418 (11th Cir. 1987), but could apply to the state common law claims.

The City asserts that the failure to include specific dates in the notices means that the notices were not filed within three years of the alleged conduct.  Counter-Plaintiffs contend that the harm is continuing as the properties are either in foreclosure, threatened with foreclosure, and/or have had buildings demolished resulting in a continuing diminution in value.  The Court notes that none of the cases cited by the City in support of its arguments, nor the statutory language itself, discuss whether precise dates of the alleged conduct are required to be in the notice.  This Court is hesitant to impose such a requirement under state law in this federal proceeding.  Therefore, the notices that were sent are deemed sufficient for this action.


### 3.  Sovereign Immunity

The City argues that it is immune under Florida law for the common-law claims in the Counterclaim because it acted through discretionary code enforcement actions. The City also contends that to the extent the slander of title claim is based upon malicious conduct, such conduct was done by employees, and therefore Fla. Stat. § 768.28(9)(a) precludes the City's liability.  Counter-Plaintiffs oppose these arguments.

The City first relies upon Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 918-920 (Fla. 1985), for the proposition that sovereign immunity bars claims attacking operational activities, particularly discretionary functions such as code enforcement.  The Florida Supreme Court held that a governmental entity cannot be liable in tort to individual property owners for the negligent actions of its

building inspectors in enforcing provisions of a building code.  468 So. 2d at 914.

Counter-Plaintiffs distinguish Trianon Park on its facts, asserting that in the present

case a different part of Florida law was violated, and the City "had more connection and

relation with code inspectors than was ever permitted or necessary."  Response to City

Motion to Dismiss at 19 [DE 64].  Given the sweeping nature of the question answered

by the Florida Supreme Court in Trianon Park, that decision will govern this Court's

determination of the issue.

Counter-Plaintiffs acknowledge that the underlying test for whether governmental

immunity exists, the Evangelical Brothers test followed by the court in Trianon Park,

does apply to this case.  The Florida Supreme Court stated that the Evangelical

Brethren test "utilized the following criteria for determining the line of demarcation

between discretionary and other executive or administrative processes," specifically:

> (1) Does the challenged act, omission, or decision necessarily involve a
> basic governmental policy, program, or objective? (2) Is the questioned
> act, omission, or decision essential to the realization or accomplishment of
> that policy, program, or objective as opposed to one which would not
> change the course or direction of the policy, program, or objective? (3)
> Does the act, omission, or decision require the exercise of basic policy
> evaluation, judgment, and expertise on the part of the governmental
> agency involved? (4) Does the governmental agency involved possess the
> requisite constitutional, statutory, or lawful authority and duty to do or
> make the challenged act, omission, or decision?

468 So.2d at 918 (citing Evangelical United Brethren Church v. State, 407 P.2d 440,

445 (Wash. 1965)).  The answer to all those questions is "yes," meaning "the

governmental conduct is discretionary and 'nontortious.'"  Id.  The code enforcement

program necessarily involves the basic government objective of public safety; the code

enforcement program is essential to the realization of public safety; the City does

exercise judgment and expertise in implementing the program; and the City possesses the authority under state law to make code enforcement decisions.  Therefore, the common law claims for nuisance (Count V) and slander of title (Count VI) are barred by state sovereign immunity.  Of course, having said that, this immunity does not extend to constitutional violations and the § 1983 claims, but only to common law claims.

The City also contends that to the extent the slander of title claim is based upon malicious conduct, such conduct was done by employees, and therefore Fla. Stat. § 768.28(9)(a) precludes the City's liability for malicious acts of employees.  Actual malice is an element of a claim for slander of title.  See Residential Communities of America v. Escondido Community Ass'n, 645 So. 2d 149 (Fla. Dist. Ct. App. 1994); Allington Towers Condominium North, Inc. v. Allington Towers North, Inc., 415 So.2d 118 (Fla. Dist. Ct. App. 1982).  Counter-Plaintiffs argue that its present claims are against the "willful, wanton and malicious actions by the City, not its individual employees."  However, the City can only act through its employees.  Florida law provides immunity for the City for malicious actions taken by its employees.  Therefore, § 768.28(9)(a) precludes the claim for slander of title against the City.

### C.  Pleading Inadequacies

#### 1.  Rule 8

The City argues that the Counterclaim is devoid of the "who, what, when" as to the individual properties that Counter-Plaintiffs allege were unconstitutionally taken by the City.  Counter-Plaintiffs argue that they have sufficiently plead their causes of action.  Paragraphs 1-5 of the Counterclaim list the addresses of the properties owned

9

by the named Counter-Plaintiffs that were subjected to the allegedly unlawful practices of the City.  However, the factual allegations pertaining to Counter-Plaintiffs Hezzekiah Scott and Virgil Bolden contain only legal conclusions regarding how the City's actions affected their property by referring to "the illegal taking of his property," and forcing a sale "through the use of illegal code enforcement process and contract zoning." Counterclaim, ¶¶ 1-2.[3]  By contrast, the claims of Gloria Burnell allege that the City "demolished" her property, declared it "unsafe" and "refused her request for community development or other entitlement monies. . . to make repairs."  Id., ¶ 3.  The claims of the late Walter Tirschman allege that the City ran up fines and liens and then demolished his homestead without compensation.  Id., ¶ 5.  The Burnell and Tirschman claims do contain sufficient factual allegations.  A closer call involves the claim of Karen McNair, who states that she seeks to assert her rights under the Settlement Agreement in the Turner matter, but does not state which rights were violated.  Id., ¶ 4.

While the Counterclaim need not describe the specific details of the code enforcement procedures used against each of the Counter-Plaintiffs' properties, more than legal conclusions are required under Twombly and Rule 8 for the claims of Scott, Bolden and McNair.  Those claims are subject to dismissal with leave to amend.

### 2.  Individual Defendant Battle

Defendant Battle argues that the Counterclaim violates Rule 10 by not

---

[3]  Additional factual allegations related to Bolden appear at ¶ 49, which allege that City Commissioner Carlton Moore "threatened him to sue or he would fine and lien his property," and that "City officials pursued him incessantly and forced him by way of threatening jail time to sell" his property to an entity created by this City Commissioner.

differentiating claims against Battle, an individual defendant who has a right to claim

qualified immunity to the § 1983 claims, with claims against the City.  In response,

Plaintiff asserts that Battle should be treated as one and the same as the City, but be

individually liable.  Upon a review of the Complaint, the only claims that would appear to

apply to an individual defendant, as opposed to the City, would be the constitutional

claims.[4]

Defendant Battle relies upon an opinion by the United States Court of Appeals

for the Eleventh Circuit that describes a heightened pleading standard for § 1983 claims

against an individual who can claim qualified immunity.  Swann v. Southern Health

Partners, Inc., 388 F.3d 834, 837-38 (11th Cir. 2004).  Last June, the Eleventh Circuit

made clear that the Iqbal decision described in the prior section of this Order

superceded any heightened pleading standard as to all civil actions, including § 1983

actions.  Randall v. Scott, 610 F.3d 701, 709-710 (11th Cir. 2010).  However, under the

Iqbal standard, a plaintiff must allege facts which put each defendant on notice of the

claims against him.

Under the Iqbal standard, Counter-Plaintiffs have failed to allege what actions

Battle himself personally took to violate Counter-Plaintiffs' constitutional rights.   A

supervisor is not vicariously liable under § 1983 for the acts of subordinates.  Doe v.

School Bd. of Broward County, 604 F.3d 1248, 1266 (11th Cir. 2010).  Rather, a plaintiff

must show that the supervisor personally participated in the alleged constitutional

---

[4] For example, Battle himself did not receive any federal funds (with regard to the fraud claims), nor are there any allegations that he personally violated Florida Chapter 162 regarding code enforcement.

violation or show a causal connection between the supervisor's actions and the alleged constitutional violation.  Id.  This connection requires either "a history of widespread abuse [which] puts the responsible supervisor on notice of the need to correct the deprivation, and he fails to do so," or, when the "supervisor's custom or policy results in deliberate indifference to constitutional rights."  Id. (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).  This standard for supervisor liability is "extremely rigorous." Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).

If the Counter-Plaintiffs' allegations are intended to state that every action taken by the City was done either by Defendant Battle or persons acting under his orders, then Plaintiff must allege facts in a pleading (rather than a brief) that meet the elements of such a claim.  As currently pled, the counterclaims fail to state a claim for relief against individual defendant Alfred Battle.

### 3.  Fraud Claims

The City further alleges that Counter-Plaintiffs have failed to comply with the heightened pleading standard for the fraud claims in Counts I, VII, and XX.  Rule 9(b)of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The particularity requirement of Rule 9(b) serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior."  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  The application of Rule 9(b), however, must not abrogate the concept of

12

notice pleading under the federal rules.  Id.; Friedlander v. Nims, 755 F.2d 810, 813 n.2 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.").

More specifically, the Eleventh Circuit stated in Ziemba that: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  256 F.3d at 1202 (quotations and citations omitted); U. S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  Allegations of date, time, or place satisfy the requirement of Rule 9(b) that the circumstances of the fraud be alleged with particularity, but alternative means are also available to satisfy the rule.  Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988).

Counter-Plaintiffs contend that they did allege that the City's certifications to HUD were fraudulent when made.  Counter-Plaintiffs attach the certifications to the Complaint.  However, the allegations as to date, time or place must be in the Counterclaim, not buried in an attachment or discussed in a brief.  Counter-Plaintiffs should remedy this problem if they choose to refile the Counterclaims.

### D.  Failure to State a Claim

### 1.  Equal Protection Claims (Count VIII, XIV)

The City argues that Counter-Plaintiffs have failed to sufficiently allege their

§ 1983 claims for violations of the equal protection clause of the United States

Constitution.  The City asserts that Counter-Plaintiffs have failed to identify similarly

situated comparators that were treated preferentially nor allege that the City's conduct

had a discriminatory purpose and effect, citing to  Mencer v. Hammonds, 134 F.3d

1066, 1070 (11th Cir. 1998).  The City contends the allegations in the Counterclaim are

conclusory and merit dismissal.

Counter-Plaintiffs respond by pointing out that the Counterclaims do allege that

91% of the Northwest section of the City is Black (¶ 91), that code enforcement officers

were pulled from other parts of the City to sweep the Northwest section (¶¶ 44, 91), that

such an enforcement program was never done anywhere else in the City (¶ 91), and all

of the City's actions were done with the intent to displace Black residents.  While these

allegations lack detail, they are factual allegations and not legal conclusions.  Counter-

Plaintiffs rely upon the United States Supreme Court decision in Village of Arlington

Heights v. Metropolitan Development Housing Corp., 429 U.S. 252 (1977), for the

proposition that they can show discriminatory intent through inquiry into the following

factors: 1) the impact of the official action on a specific race as compared to others;

2) whether "a clear pattern, unexplainable on grounds other than race, emerges from

the effect of the state action even when the governing legislation appears neutral on its

fact;" 3) the "historical background of the decision . . . particularly if it reveals a series of

official actions taken for invidious purposes;" 4) the "specific sequence of events

14

leading up to the challenged decision;" 5) procedural and substantive departures from established procedures; and 6) the legislative or administrative history.  Id., 265-268.

The Court concludes that for purposes of the filing of an amended counterclaim in accordance with other parts of this Order, Counter-Plaintiffs have not completely stated a § 1983 claim against the City for violation of the equal protection clause under Arlington Heights.  In their next amended counterclaim, they should ensure the inclusion of factual allegations that meet the relevant factors.

### 2.  Regulatory Takings Claim (Count XV)

The City next contends that Counter-Plaintiffs have failed to sufficiently allege a regulatory takings claim of property without just compensation.  The City argues that the relevant federal case law requires Counter-Plaintiffs to show that they have exhausted all available state law remedies.  As with the City's arguments related to res judicata (*supra*, Section B.1), the City asserts that Counter-Plaintiffs have failed to exercise all of their state law remedies and therefore have failed to state a § 1983 claim for a taking under the Fifth and Fourteenth Amendments.

Consistent with their arguments against the City's res judicata argument, Counter-Plaintiffs contend that state law affords them the option of bringing an action separate from the administrative code enforcement proceedings, and that exhaustion is not required for a § 1983 claim.  They argue that eminent domain law in Florida would be eviscerated if cities or the state could use Chapter 162 (code enforcement) to bypass the use of eminent domain.  However, Counter-Plaintiffs fail to sufficiently distinguish the United States Supreme Court's holding that a federal court cannot

15

entertain a takings claims under § 1983 "unless or until the complaining landowner has been denied an adequate postdeprivation remedy."  City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 721 (1999).  The Supreme Court suggests that a decision on whether a remedy is adequate is an issue for the Court to decide.  Id., 722.  That decision cannot be made on the record currently before the Court, as the information regarding the lack of postdeprivation remedies is not explained in the Amended Counterclaim.  In reasserting a takings claim, Counter-Plaintiffs will need to ensure they have met all of the elements required by the United States Supreme Court for such claims, even if brought under § 1983.

### 3.  Procedural Due Process Claim (Count II)

A § 1983 action alleging a procedural due process clause violation "requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."  Doe v. Florida Bar, – F.3d –, 2011 WL 149523 (11th Cir. January 19, 2011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).  Counter-Plaintiffs have allegedly been deprived of real property by the City, leaving the City to contend that Counter-Plaintiffs' failure to exercise any and all of their administrative and appellate rights under state law preclude a procedural due process claim.

The notice necessary "to satisfy due process requires only that interested persons be given 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mesa Valderrama v. U.S., 417 F.3d 1189, 1196-97 (11th Cir.

16

2005) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950)).  Counter-Plaintiffs argue that they have been denied a meaningful opportunity

to be heard, with defective notices under state law and the threat of arrest

compounding the procedural due process violations.  On a motion to dismiss, the Court

must take the factual allegations regarding the allegedly deficient notices as true.  See

Amended Counterclaim, ¶¶ 49, 51, 52, 55.  Though as plead, the present claim is

sufficient to survive a motion to dismiss, after discovery, it will be up to the Court to

determine as a legal matter whether the notice was constitutionally sufficient, a decision

that cannot be made in this case solely upon the present pleadings.


### 4.  Substantive Due Process Claim (Count III)

A substantive due process claim requires the similar elements of: 1) a

deprivation, of 2) a property right, and 3) state action.  However, only state action that is

an arbitrary exercise of government power which "shocks the conscience" rises to the

level of a substantive due process violation.  T.W. ex rel. Wilson v. School Board of

Seminole County, Fla., 610 F.3d 588, 598 (11th Cir. 2010) (quoting County of

Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  The City contends that because it

acted with a legitimate purpose in code enforcement, its actions cannot be considered

to shock the conscience.  Although disputing that this is the proper legal standard,

Counter-Plaintiffs argue that the City's action in targeting "the Black Northwest Section

to take properties without compensation is egregiously unacceptable and violates

substantive due process."  Counter-Plaintiff's Opposition at p. 31.

As with the procedural due process claim, it would appear that whether the City's

17

actions "shock the conscience" is more appropriately decided after discovery.  Taking

Counter-Plaintiffs' factual allegations as true, the Court denies the motion to dismiss.

However, in reasserting a substantive due process claim, Counter-Plaintiffs will need to

ensure they have met all of the elements required by the United States Supreme Court.

### 5.  Federal Statutory Claim in Counts X, XI, XVI and XIX[5]

The City argues that the claims in these counts reference multiple sections of the

Fair Housing Act and Civil Rights Act, and therefore Plaintiff has failed to place the City

on sufficient notice of the particular claims, including whether the claims have been filed

within the two year statute of limitations in 42 U.S.C. § 3613.  Counter-Plaintiffs contend

that their claims are sufficient under Rule 8 of the Fed. R. Civ. P., and that any violation

of either statute is continuing for purposes of the statute of limitations.

The claim in Count X fails to provide sufficient notice to the City because it

references a multitude of statutory provisions.  Under Fed. R. Civ. P. 10(b) a plaintiff is

required to have only one claim per count in a complaint.  Anderson, 77 F.3d at 366-67.

While particularity as to factual allegations are not required, a counter-defendant must

be on sufficient notice to know what particular statutory provision is alleged in each

count of a counterclaim.

Count XI attempts to state a claim under 42 U.S.C. § 3604(a).  This subsection

makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a

---

[5]  The claim in Count XVIII does not allege a particular claim, but rather seeks the remedy of injunctive relief.  Counter-Plaintiffs have not specifically moved for a preliminary injunction under Fed. R. Civ. P. 65, and on the record as it stands now, have not met their burden to show a substantial likelihood of success on the merits.

dwelling to any person because of race. . . ."  The Counterclaim merely alleges that the City violated this provision "due to the disproportionately adverse impact of their actions on the African Americans in the Northwest section."  ¶ 100.  Although Counter-Plaintiffs reallege ¶¶ 45-65 within Count XI, the Court concludes that Counter-Plaintiffs have failed to make non-conclusory allegations as to how the City's actions violated 42 U.S.C. § 3604(a).

The claim in Count XVI does not reference a specific section of federal law, citing generally to the Fair Housing Act and Title VI of the Civil Rights Act.  This claim appears to only pertain to the City's requirement to perform a meaningful "analysis of the impediments to fair housing" (hereinafter, "AI").  Amended Counterclaim, ¶¶ 126-128.  The claim then reasserts a fraud claim against the City regarding their HUD certifications similar to that in Counts I and XX.  Id., ¶¶ 129-130.  Therefore, this claim is dismissed for failure to plead fraud with particularity.

Finally, in Count XIX, Counter-Plaintiffs allege an "implied right of action" under the Fair Housing Act, citing again to multiple statutory sections of state and federal law. As plead, this claim violates Fed. R. Civ. P. 10, the one claim per count rule, and is dismissed without prejudice.


### 6.  Breach of Settlement Agreement (Count IX)

Counter-Plaintiffs allege a claim for breach of the settlement agreement in the prior action of Velva Turner v. City of Fort Lauderdale, Case No. 05-61635.  This claim focuses on the allegedly defective notices that were the subject of the Turner settlement.  The City asserts that Counter-Plaintiff McNair cannot be a proper party for

this claim.  Upon a review of the earlier case, the City is correct that no class was certified in the prior case, and the court in the prior action did not approve the settlement agreement for that reason.  The prior court then denied a motion to enforce the agreement because it lacked jurisdiction over what is a state law breach of contract matter.

This Court concludes that Count IX is a breach of contract action over which this Court has supplemental jurisdiction if a proper federal claim is eventually stated. Whether a particular Counter-Plaintiff has standing to assert a breach of contract claim is not properly before this Court at this time.  An Amended Counterclaim should specify which Counter-Plaintiff seeks to enforce which provision of the agreement.

### 7.  Breach of Florida Chapter 162 (Count IV)

Counter-Plaintiffs allege that the City violated the legislative intent of Chapter 162 by imposing daily fines at the maximum allowed by statute for simple offenses. The City contends that Counter-Plaintiffs have failed to put it on sufficient notice as to what provision of Chapter 162 the City allegedly violated.  In opposition to the motion, Counter-Plaintiffs provide more specific allegations within the body of their memorandum.  Counter-Plaintiffs' opposition at p. 43.  As noted above, a party cannot supplement the factual allegations of a pleading by including allegations in a legal memorandum.  Count IV is therefore dismissed without prejudice.

### III.  CONCLUSION

Although a few claims have been sufficiently plead, because of the overall

20

pleading inadequacies described above in Section II.C, the Court concludes the best way to proceed is to dismiss the entire Second Amended Counterclaim, with leave to Counter-Plaintiffs to re-allege the claims in compliance with this Order (except for the two state common law claims dismissed with prejudice).  With regard to Counter-Plaintiffs' motion to certify a class action, the Court will deny that motion without prejudice until there is a viable pleading that defines the class, in this instance an amended counterclaim.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Counter-Defendant Alfred Battle and the City of Fort Lauderdale's Motion to Dismiss [DE 29] is hereby **GRANTED in part**, as explained above;

2.   Counts V (nuisance) and VI (slander of title) in the Second Amended Counterclaim against the City are dismissed with prejudice, while the remaining claims are dismissed without prejudice;

3.   Counter-Plaintiffs have leave to file a Third Amended Counterclaim that comports with the rulings in this Order;

4.   Failure to file a Third Amended Counterclaim by March 14, 2011, will result in the closing of this case;

5.   Counter-Plaintiffs' Motion to Certify Class [DE 16] is hereby **DENIED without predjudice** until the filing of the Third Amended Counterclaim.  Counter-Plaintiffs may either file a renewed motion based upon the allegations in the Third Amended Counterclaim, or may file a notice renewing the prior motion;

6.   The City's Motion to Enforce State Court Stay [DE 43] is hereby **GRANTED**,

however, such stay shall terminate upon the filing of the Third Amended

Complaint;

7.      Counter-Plaintiffs' Motion to Amend Scheduling Order [DE 71] is hereby

        **GRANTED**, as the Court will enter a revised scheduling order;

8.      Counter-Plaintiffs' Motion to Strike a Portion of Reply [DE 70] is hereby **DENIED**;

9.      Counter-Plaintiffs' Motion to Allow Interim Discovery [DE 84] is hereby **DENIED.**

        **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 28th day of February, 2011.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF

22