UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-61122-CIV-COHN/SELTZER

THE CITY OF FORT LAUDERDALE,

    Plaintiff,

v.

HEZZEKIAH SCOTT,

    Defendant/Counter-claimant,

VIRGIL BOLDEN, GLORIA BURNELL, THE ESTATE
OF WALTER TIRSCHMAN and KAREN MCNAIR,

    Counter-Plaintiffs/Third Party Plaintiffs,

v.

THE CITY OF FORT LAUDERDALE,

    Counter-defendant,

ALFRED G. BATTLE, JR., Director of Community
Redevelopment Agency, in his official and individual
capacities, SHAUN DONOVAN, in his official
capacity as Secretary of United States Department
of Housing and Urban Development, and UNITED
STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

    Third-Party Defendants.
_____/

## ORDER GRANTING IN PART CITY'S MOTION
## TO DISMISS SECOND AMENDED COUNTERCLAIM

**THIS CAUSE** is before the Court upon Alfred Battle and the City of Fort Lauderdale's ("City") Motion to Dismiss Counter-Plaintiffs' Second Amended Counterclaim [DE 113], the Counter-Plaintiffs' Response [DE 117], the Counter-Defendants' Reply [DE 120], and Counter-Plaintiffs' Motion for Leave to File Sur-Reply

[DE 123]. The Court has considered all of the filings in this case, and is otherwise fully advised in the premises.

## I. BACKGROUND

This case originated in the Circuit Court in and for Broward County, Florida, as an action by the City of Fort Lauderdale ("City") to foreclose a Special Master Order and Claim of Lien on non-homestead real property owned by Defendant/Counter-Plaintiff Hezzekiah Scott. Scott and four other property owners (hereinafter "Counter-Plaintiffs") filed an Amended Counterclaim asserting various claims against the City and Alfred G. Battle, Jr. ("Battle"), individually and as Director of the City's Community Redevelopment Agency (collectively, "Counter-Defendants"). This Court granted the Counter-Defendants' motion to dismiss in part, dismissing some claims, and allowing leave for Counter-Plaintiffs to file another amended counterclaim. Counter-Plaintiffs filed an amended counterclaim [DE 105], followed by a Notice of Errata containing a similar version of the counterclaim correcting certain numbering [DE 106]. This document is entitled "Second Amended Counterclaim." The Court will refer to the document at docket entry 106 simply as the "Counterclaim."

At the outset, the Court notes that Counter-Plaintiffs continue to include pages of statutory explanations that are unnecessary in a pleading required to have sufficient *factual* allegations. See Counterclaim, ¶¶ 16-30 [DE 106]. In addition, several claims in the Counterclaim repeat the same allegations verbatim. See e.g. Counts VIII and IX; see also Counts I, XIII, XIV and XV. At the same time, in several instances Counter-Plaintiffs do not specify the particular subsections of the comprehensive federal housing

statutes they alleged have been violated.[1]

In general, the Counterclaim alleges that the City and Battle engaged in unconstitutional code enforcement operations in the Northwest portion of the City of Fort Lauderdale against Black property owners to obtain their property through a fine and foreclosure scheme, fraudulently obtained federal funds by certifying to HUD that the City was complying with HUD's mandates to use the funds to help low and middle income families obtain housing, and then using the federal funds to redevelop the Northwest portion to the benefit of high-end developers in violation of federal statutes.[2] The Counterclaim further alleges that the City violated the Fifth and Fourteenth Amendments to the United States Constitution by denying Counter-Plaintiffs their rights of substantive due process, procedural due process and equal protection (Section 1983 claims); that the City violated various provisions of the federal Fair Housing Act ("FHA") and Housing and Community Development Act ("HCDA"); that the City violated Florida statutes governing code enforcement and committed the common law tort of fraud; and that the City violated a prior settlement agreement in a related case, Velva Turner, et al. v. City of Fort Lauderdale, Case No. 06-61635-Civ-Ungaro [DE 101-2 in that case].

## II.  ANALYSIS

Counter-Defendants move to dismiss sixteen of the twenty-one claims in the Counterclaim.  The Court's previous order directed Counter-Plaintiffs to replead all of

---

[1] The Second Amended Counterclaim consists of 21 claims, 81 pages and 275 paragraphs, while the prior version contained 20 claims, 33 pages and 142 paragraphs [DE 12].

[2] By separate order, this Court dismissed the claims against the Federal Counter-Defendants for lack of standing and lack of subject matter jurisdiction [DE 91].

their claims, though the Court signaled that the claims based upon Section 1983 were sufficiently stated. The Court will proceed to analyze the claims in the order presented by Counter-Defendants.

## A. Motion to Dismiss Standard

As noted in this Court's prior Order, to survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), the Supreme Court further stated that a court need not accept legal conclusions as true, but only well-pleaded factual allegations are entitled to an assumption of truth.

As the Court has previously stated, a pleading must also comply with Fed. R. Civ. P. 8(a)(2) by setting forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and with Fed. R. Civ. P. 10(b), which requires a plaintiff to have only one claim per count in a complaint. Anderson v. District Board of Trustees of Central Florida Community College, 77 F.3d 364, 366-67 (11th Cir. 1996). These rules

4

ensure due process with proper notice as to what claims are actually being alleged against each defendant. Defendant argues that Plaintiff has again failed to comply with these rules as to certain claims discussed below.

### B.  Fraud Claims

The City alleges that Counter-Plaintiffs have failed to state a claim for fraud in Counts I, V, and XXI. In those claims, Counter-Plaintiffs allege that the City's certifications to HUD were fraudulent when made, that the City did not comply with certain provisions of the HCDA with regard to an analysis of impediments to fair housing, that the City misused federal funds by improperly certifying that its housing activities were consistent with existing Plans, and that the HUD Inspector General's Audit found these violations but the City failed to correct them.

The elements of a fraud claim include: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985). Moreover, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).

The City argues that Counter-Plaintiffs have not alleged that they relied or acted

in reliance on the statements the City **made to HUD**. In other words, no fraud was committed directly upon Counter-Plaintiffs. Rather, the City suggests that these claims as pled are disguised False Claims Act allegations, regarding alleged misdeeds of federal funds by the City. Counter-Plaintiffs attempt to rely upon Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd., 792 F.Supp. 1566 (S.D. Fla. 1992). However, their arguments made here were specifically rejected by the Court upon similar facts:

> The Plaintiffs contend, among other things, that Defendants individually and/or conspired together to submit false applications to HUD for Section 8 funds. These monthly applications were false in that they stated that the housing units at Kingston were "decent, safe and sanitary." HUD grant money was then allegedly used by the Defendants for purposes other than the repair and maintenance of Kingston causing the Plaintiffs to suffer from "deficient living conditions."

Kingston, 792 F.Supp. at 1578.[3] The Court then concluded that because HUD was the target of the alleged fraud, and not plaintiffs, a RICO claim could not be maintained.[4] Likewise in this action, the Counterclaim allegations, if taken as true, show only that the

---

[3] In a different section of the decision, the Court allowed the tenants to proceed with a fraudulent inducement claim against private landlords with regard to the leases between the tenants and the defendant landlord. Kingston at 1576. This ruling does not support Counter-Plaintiffs' argument here, because the City's certifications were made to HUD, not directly to Counter-Plaintiffs. The Court in Kingston also rejected the theory of being a third-party beneficiary to HUD's agreements with landlords. Id. 1573.

[4] Counter-Plaintiffs' counsel seeks to buttress her interpretation of Kingston by pointing out that she was also counsel for the plaintiffs in Kingston. See Counter-Plaintiffs' Motion for Leave to File Sur-Reply at p. 3 [DE 123]. Nonetheless, by citing to Kingston at page 2 of her response to the motion to dismiss, counsel is implicitly misrepresenting that Kingston supports her legal argument. While it shares some facts with the present case, Kingston specifically rejects the argument presented here by Counter-Plaintiffs' counsel, namely that certifications made to a third-party government entity can suffice to sustain a fraud claim by a different party.

City may have defrauded HUD.  Therefore, Counter-Plaintiffs cannot legally show that they suffered injury in reliance on the City's false representations made to HUD.

### C.  Federal Statutory Claims

In Count XIII, Counter-Plaintiffs allege that the City has violated their rights under the "Housing and Community Development Act."  Counter-Plaintiffs repeat their allegations that the City did not comply with certain provisions of the HCDA with regard to an analysis of impediments to fair housing, that the City misused federal funds by improperly certifying that its housing activities were consistent with existing plans, and that the HUD Inspector General's Audit found these violations but the City failed to correct them.  Counterclaim, ¶¶ 214-226.  As the City asserts, this claim fails because there is only a limited private right of action to enforce particular provisions of the HCDA, and Counter-Plaintiffs have not specified a particular provision of that Act under which they purport to sue the City.  In Nabke v. U.S. Dept. of Housing and Urban Dev., 520 F. Supp. 5, 8-9 (W.D. Mich. 1981), the Court found no private right of action under 42 U.S.C. § 5309 for alleged misuse of funds from a block grant for community development.  Counter-Plaintiffs rely upon Price v. City of Stockton, 390 F.3d 1105, 1111-1113 (9th Cir. 2004), which did hold that a private right of action exists under 42 U.S.C. §§ 5304(d)(2)(a)(iii) & (k) with regard to "particular relocation assistance benefits that grantees 'shall' provide to individuals displaced by federally funded acquisition or rehabilitation activities. . . ."  However, no private right of action exists under 42 U.S.C. §§ 5304(d)(2)(a)(i) & (ii), with respect to the mandate placed upon governmental agencies for one-for-one replacement of occupied and vacant occupiable low and moderate income housing units, designed to keep housing affordable for low and

moderate income persons.  Price, 390 F. 3d at 1113.  The Counterclaim does not allege the facts required to maintain the limited claim recognized in Price.  Rather, the Counterclaim continues to broadly allege wrongdoing by the City with regard to its failure to implement proper fair housing policies and misuse of federal funds, for which no private right of action is recognized.  Counter-Plaintiffs' lack of pleading which statutory provision therefore fails to put Counter-Defendants on sufficient notice Rule 8 and Rule 10 because only a limited number of particular provisions of the HCDA allow for a private right of action.

In Count XIX, Counter-Plaintiffs allege an "implied right of action" under 24 C.F.R. § 85.40 and § 570.506 for Counter-Defendants' failure to properly use federal funds and to maintain records.  The City repeats its citations in support of dismissal for the lack of a private right of action regarding the use of housing grants.  Counter-Plaintiffs rely upon Estevez v. Cosmopolitan Associates LLC, 2005 WL 3164146 (E.D.N.Y. 2005), for the proposition that a private right of action exists under federal housing laws.  However, the Estevez decision found a private right of action from 42 U.S.C. § 1437f(t), which specifically concerns the rights of tenants in Section 8 housing. In Count XIX of this action, Counter-Plaintiffs allege a private right of action under regulations, not a statute, that have little if anything to do with Section 8 funds.  The Court agrees with Counter-Defendants that no private right of action exists under  24 C.F.R. § 85.40 and § 570.506.

Similarly, the claims in Counts VIII and IX, which are verbatim to each other, do not reference a specific section of federal law, citing generally to the "Fair Housing Act, 42 U.S.C. §§ 3601-3619" and "Title VIII of the Civil Rights Act."  These claims allege

8

both the City's failure to perform a meaningful "analysis of the impediments to fair housing" (hereinafter, "AI"), improper use of "exclusionary zoning," "block-busting," and "redlining," and use of "the illegally and target code enforcement actions." Counterclaim, ¶¶ 176-184. Defendants contend these claims violate Rule 10(b) and the Court's prior order, and should be dismissed with prejudice because Plaintiff has had repeated opportunities to properly plead such claims.

Counter-Plaintiffs argue that they have met the requirements of Rule 10(b) by adding specific factual allegations and putting Counter-Defendants on notice as to what particular statutory provision is being alleged in each count.[5] The Court disagrees. The factual allegations in the Counterclaim are conclusory and there are no particular statutory provisions alleged. In Count VIII, reference to "the Fair Housing Act, 42 U.S.C. §§ 3601-3619" is not sufficient notice of what claim is plead. In another example of either poor draftsmanship, sloppy legal research, or a lack of understanding of federal housing laws, Count IX seeks exactly the same relief, as "Title VIII of the Civil Rights Act" **is** the Fair Housing Act. Dixon v. The Hallmark Companies, Inc., 627 F.3d 849, 852 (11th Cir. 2010). Counter-Plaintiffs have again violated Rule 10(b) and failed to properly plead a claim for relief in Counts VIII and IX.[6] These claims will be dismissed.

---

[5] Counter-Plaintiffs also argue that "[t]he court already considered these arguments when it ruled upon [the version of the claim in the Amended Counterclaim]. If this is a suggestion that Counter-Defendants waived an argument, it is simply wrong.

[6] As noted above, it is necessary to specify the particular statutory provision that a party is suing under because only certain parts of the federal housing statutes provide for a private cause of action.

A similar fate is appropriate for the claims in Counts XIII, XIV and XV.  These claims repeat the allegations in the fraud claim in Count I.  Defendants make the same argument that these claims violate Rule 10(b) and the Court's prior order, and should be dismissed with prejudice because Plaintiff has had repeated opportunities to properly plead such claims.  Count XIII alleges a violation of the "Housing and Community Development Act," Count XIV alleges a violation of the "Fair Housing Act," and Count XV alleges a violation of "Title VI of the Civil Rights Act."  However, no particular statutory provisions are alleged as being violated.  As these statutes have multiple sections within them, and not all of which provide for a private right of action, these claims are insufficiently plead and should be dismissed.

Turning next to Counts XVII and XVIII, again Counter-Defendants argue that the claims fail to comply with Rule 10(b).  While Counter-Plaintiffs have added some factual allegations and divide what had been a single claim in their prior pleading, it is insufficient to entitle a claim an "Implied Right of Action under 42 U.S.C. Section 3601 et seq., 3604, 3608," or "Implied Right of Action under 42 U.S.C. Section 5304, 2000A et seq.," and not specify in the claim under which particular section of law a party is proceeding.  In addition, the factual allegations within Counts XVII and XVIII are conclusory.  Therefore, these claims will also be dismissed.

## D.  State Law Claims[7]

In Count IV, Counter-Plaintiffs allege that the City violated the legislative intent of Chapter 162 by imposing daily fines as a means to displace low-income minorities through the code enforcement system.  Chapter 162 "authorizes counties and municipalities to create code enforcement boards to enforce local codes and ordinances which have no criminal penalties, where a pending or repeated violation continues to exist."  City of Gainesville Code Enforcement v. Lewis, 536 So. 2d 1148, 1150 (Fla. Dist. Ct. App. 1988).  The City contends that Counter-Plaintiffs have failed to put it on sufficient notice as to what provision of Chapter 162 the City allegedly violated.

While it is true that Counter-Plaintiffs do not state within Count IV the particular statutory section they allege was violated, they do reference particular subsections of Chapter 162 earlier in the Counterclaim.  See ¶¶ 18-20.  Nonetheless, there does not appear to be any provision of Chapter 162 that allows an aggrieved party to file a separate claim against a municipality for not following Chapter 162.[8]  As a federal court, this Court must be particularly careful when inferring a new state law cause of

---

[7] The claim in Count XVI does not allege a particular cause of action, but rather seeks the remedy of injunctive relief.  Counter-Plaintiffs have not specifically moved for a preliminary injunction under Fed. R. Civ. P. 65, and on the record as it stands now, have not met their burden to show a substantial likelihood of success on the merits.  This claim will therefore be dismissed, though Counter-Plaintiffs retain the right to seek the remedy of injunctive relief.

[8] An aggrieved party may appeal any final administrative orders to state circuit court.  Fla. Stat. § 162.11.  Counter-Plaintiffs allege that they were prevented from doing so.  The fact that a party may raise failure to comply with provisions of Chapter 162 as a defense to a code enforcement action does not mean that an affirmative claim can be brought against a municipality under Chapter 162, as there is no provision for an award of damages to a successful plaintiff.

action.  Swerhun v. Guardian Life Ins. Co. of America, 979 F.2d 195, 198 (11th Cir. 1992) (citing Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791, 795 (11th Cir.1989)). Therefore, the Court will dismiss Count IV for failure to state a claim.[9]

Counter-Defendants make a similar argument in favor of dismissal of Count XX, labeled "Implied right of action under Florida Statutes Chapters 162 and 163." The Court reaches the same decision as with Count IV.  Count XX is dismissed for failure to specify a claim under Rule 10(b) by referencing two entire chapters of Florida Statutes, and for failure to state a claim as there is no private right of action under these Chapters.

### E.  Regulatory Takings Claim

The City next contends that Counter-Plaintiffs have failed to sufficiently allege a regulatory takings claim of property without just compensation.  The City argues that the relevant federal case law for a § 1983 claim for a taking under the Fifth and Fourteenth Amendments requires Counter-Plaintiffs to show that they have exhausted all available state law remedies.  Counter-Plaintiffs argue that they have alleged a permanent, physical occupation of their property, and therefore do not need to exhaust all state law remedies.  Upon reviewing Count XII, Counter-Plaintiffs allege that Burnell, Tirschman and Bolden's properties were demolished without compensation, thus alleging a physical occupation of their property.  Counterclaim, ¶ 209.  In addition, they allege imposition of fines and levies that exceed the value of their property.  Id. ¶ 204.

---

[9] Some of the allegations within Count IV may support the claim in Count II under § 1983 for a procedural due process violation.

> In the Court's February 28 Order, the Court stated that:
>
> Counter-Plaintiffs fail to sufficiently distinguish the United States Supreme Court's holding that a federal court cannot entertain a takings claims under § 1983 "unless or until the complaining landowner has been denied an adequate postdeprivation remedy." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 721 (1999). The Supreme Court suggests that a decision on whether a remedy is adequate is an issue for the Court to decide. Id., 722. That decision cannot be made on the record currently before the Court, as the information regarding the lack of postdeprivation remedies is not explained in the Amended Counterclaim. In reasserting a takings claim, Counter-Plaintiffs will need to ensure they have met all of the elements required by the United States Supreme Court for such claims, even if brought under § 1983.

Counter-Plaintiffs have alleged that the City cut off any post deprivation remedy by threatening to arrest Scott if he appeared at a hearing to contest his fines and by failing to honor the settlement agreement (see below) in a prior action regarding proper notice of such hearings. Counterclaim ¶¶ 206, 208. The Court concludes that the takings claim in Count XII sufficiently states a claim under § 1983.[10]

### F.  Breach of Settlement Agreement

In Count VII, Counter-Plaintiffs again allege a claim for breach of the settlement agreement in the prior action of Velva Turner v. City of Fort Lauderdale, Case No. 05-61635. Memorandum of Settlement, Exhibit A to Second Amended Counterclaim [DE 106]. This claim focuses on the allegedly defective notices that were the subject of the Turner settlement. The City asserts that the Counter-Plaintiffs, other than McNair, are not proper parties for this claim as they were not parties to the prior action and no class was certified in that action. The City also contends that Count VII is apparently based

---

[10]  This decision is without prejudice to being revisited at the summary judgment stage of the proceeding, upon proper motion.

upon forms that pre-dated the Settlement Agreement, as Exhibit B to the Counterclaim is dated in 2006, whereas the settlement was signed February 7, 2007, and the Settlement Agreement is only prospective as to its non-monetary provisions.[11]

In response, Counter-Plaintiffs note that they have complied with this Court's direction to specify which Counter-Plaintiff seeks to enforce which provision of the agreement. Counter-Plaintiffs also contend that because the City agreed in the Settlement that it "will not object to Plaintiffs seeking Court approval of the Parties' settlement for the purposes of the non-certified putative class members," that it is precluded from making this standing argument at this time. See "Memorandum of Settlement," ¶ 11. Upon a review of the tortured history of the Settlement Agreement, it appears that the City never did object to approval of the settlement – rather, the District Judges before whom Counter-Plaintiffs presented the issue concluded that they lacked jurisdiction to provide relief. Case No. 05-61635-Civ at DE's 107 and 112 and Case No. 08-60777-Civ at DE 24.[12]

This Court concludes that only McNair has standing to bring this breach of contract claim, as no class was ever certified that would allow the other Counter-Plaintiffs to enforce the Settlement Agreement. As to the Settlement Agreement itself,

---

[11] The Court may consider documents referred to (or attached) by a plaintiff in a complaint which are central to the plaintiff's claim and undisputed as to authenticity for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment. SFM Holdings, Ltd. v. Banc of America Securities, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340, n.3 (11th Cir. 2005). There is no dispute as to the authenticity of the Memorandum of Settlement in Case No. 05-61635.

[12] This Court previously concluded that it would have supplemental jurisdiction over this breach of contract action if a proper federal claim is stated.

14

the plain language of the agreement requires the City to "change," "delete," and "revise" its code enforcement forms, and gives the City ninety days to do so. Memorandum of Settlement, ¶¶ 1-3, 10. It would be physically impossible for such changes to be made retroactively, and unreasonable to interpret the Agreement any other way. Thus, this claim may proceed under this interpretation of the Agreement.

### G.  Individual Defendant Battle

Third-Party Defendant Battle, an individual who has a right to claim qualified immunity to the § 1983 claims, again argues that the Counterclaim fails to state a claim as to him in his individual capacity by not identifying which claims are pled against him. Counter-Plaintiffs respond by listing the twenty-one paragraphs in the Counterclaim's "Statement of Facts" which specifically relate to Battle. These paragraphs are then incorporated into each count.

As the Court previously stated, under the Iqbal standard, Counter-Plaintiffs must allege what actions Battle himself personally took to violate Counter-Plaintiffs' constitutional rights. A supervisor is not vicariously liable under § 1983 for the acts of subordinates. Doe v. School Bd. of Broward County, 604 F.3d 1248, 1266 (11th Cir. 2010). Rather, a plaintiff must show that the supervisor personally participated in the alleged constitutional violation or show a causal connection between the supervisor's actions and the alleged constitutional violation. Id. This connection requires either "a history of widespread abuse [which] puts the responsible supervisor on notice of the need to correct the deprivation, and he fails to do so," or, when the "supervisor's custom or policy results in deliberate indifference to constitutional rights." Id. (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). This standard for supervisor liability is

"extremely rigorous."  Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).  Counter-Plaintiffs have failed to sufficiently allege supervisory liability as to Battle.

Turning next to whether Battle's personal participation as to the remaining claims has been sufficiently plead, the alleged actions by him only relate to the § 1983 claim in Count XI.  For example, in the procedural due process (Count II) and the substantive due process (Count III) claims, Counter-Plaintiffs allege that the notices used by "the City" and the fine scheme process used by "the City" violated the United States Constitution.  Counterclaim ¶¶ 122, 127.  Battle is not the party issuing notices or collecting fines.  Next, in Count VI regarding their § 1983 race discrimination allegations, Counter-Plaintiffs allege that "the City" took certain actions to displace and harass black residents.  Id. ¶¶ 165-168.  As to Count VII, Battle was not a party to the Turner Settlement Agreement and cannot personally breach that agreement.  As to Count X, it is "the City" that is alleged to violate the Fair Housing Act.  Id. ¶ 188.  Similarly, in Count XII, it is "the City" that is alleged to have made decisions that led to an alleged taking of Counter-Plaintiffs' property.  It is only as to Count XI, an equal protection claim, did Counter-Plaintiffs sufficiently allege that Battle personally took actions that allegedly violated Counter-Plaintiffs' constitutional rights.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Alfred Battle and the City of Fort Lauderdale's Motion to Dismiss Counter-Plaintiffs' Second Amended Counterclaim [DE 113] is hereby **GRANTED in part** and **DENIED in part**, as explained above;

2. The City shall file an Answer to Counts II, III, VI, VII, X, XI and XII of the Second Amended Counterclaim at docket entry 106 by August 4, 2011;

3. Alfred Battle shall file an Answer to Count XI of the Second Amended Counterclaim at docket entry 106 by August 4, 2011;

4. Counter-Plaintiffs' Motion for Leave to File Sur-Reply [DE 123] is **DENIED**, though the Court has considered the arguments contained therein in entering this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of July, 2011.

_____
JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF