UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61122-CIV-COHN/SELTZER

THE CITY OF FORT LAUDERDALE,

> Plaintiff,

vs.

HEZZEKIAH SCOTT,

> Defendant,

vs.

HEZZEKIAH SCOTT, et al.

> Counter-Plaintiffs,

vs.

THE CITY OF FORT LAUDERDALE, et al.

> Counter-Defendants,

_____/

## ORDER GRANTING MOTION FOR PROTECTIVE ORDER

THIS CAUSE is before the Court on Plaintiff/Counter-Defendant City of Fort Lauderdale's and City of Homestead Manager George Gretsas' Motion for Protective Order (DE 168), Counter-Plaintiffs' Response (DE 175), and City Manager Gretsas' Reply thereto (DE 178) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth below.

Plaintiff, the City of Fort Lauderdale, originally brought this action in state court to foreclose a Special Master Order and Claim of Lien on un-homesteaded real property

owned by Defendant/Counter-Plaintiff Hezekiah Scott.[1]  Scott and four other property owners ("Counter-Plaintiffs") have filed a Second Amended Counterclaim (DE 106) against the City and Alfred Battle, the City's Director of the Community Redevelopment Agency ("CRA") (in both his individual and official capacities) ("Counter-Defendants").  The Second Amended Counterclaim generally alleges that the City and Battle engaged in unconstitutional code enforcement operations in the Northwest portion of the City against Black property owners to obtain their property through a fine and foreclosure scheme, denied Counter-Plaintiffs their rights of equal protection in violation of 42 U.S.C. § 1983, and violated the Fair Housing Act.[2]

Counter-Plaintiffs have served on George Gretsas a notice to take his deposition; Gretsas is the current City Manager of the Homestead, Florida, and was the City Manager of Fort Lauderdale, Florida from August 2004, until June 2010.  Pursuant to Federal Rule of Civil Procedure 26(c),[3] City Manager Gretsas now moves the Court to enter a protective

---

[1]  The case was removed to this Court by the United States Department of Housing and Urban Development ("HUD") and the Secretary of HUD; the District Court subsequently dismissed all claims against these federal defendants.

[2]  The District Court has dismissed 14 of the 21 claims asserted by Counter-Plaintiffs in their Second Amended Counterclaim.  See July 26, 2011 Order (DE 125).  The following seven claims remain against Defendants:  Count II - The Notices Used by the City [to Warn of Code Violations] Violate Procedural Due Process; Count III - The City's Fine Scheme Violates Substantive Due Process; Count VI - The City's Community Redevelopment Plans ("CRDP") Violate Equal Protection of the Fifth and Fourteenth Amendments: Count VII - (Only as to McNair)  The City Breached the Settlement Agreement in Velva Turner; Count X - The City's Actions Violate the Fair Housing Act (Disparate Impact on the Basis of Race); Count XI - The City's Code Violations Violate Equal Protection under § 1983 (This is the only claim remaining against Defendant Battle); Count XII - The Foreclosure in this Case is an Unlawful Taking (City's Attempt to Circumvent Eminent Domain).

[3]  Rule 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

order precluding Counter-Plaintiffs from deposing him.  City Manager Gretsas argues that

he should not be deposed because he is a high-level government official who "has no

unique knowledge of the issues in this matter which would not be obtainable from other

persons and [City of Fort Lauderdale] personnel that have superior first hand knowledge

and/or whom were involved in the alleged issues and/or alleged omissions asserted in this

matter."[4]  Motion at 2 (DE 168).  Additionally, City Manager Gretsas argues that deposing

him when the "alleged issues and/or facts are substantially available in the written record

would result in nothing more than undue annoyance, oppression, and harassment, and

disruption of [his] duties and functions of governance as City Manager with the City of

Homestead."  Id. at 3.

Counter-Plaintiffs first respond that Counter-Defendant City of Fort Lauderdale does

not have standing to bring the instant Motion for Protective Order.  They argue that

because the City contends that a deposition would disrupt Gretsas' duties and functions

---

expense . . . ."  Fed. R. Civ. P. 26(c)(1).  Rule 26(b)(2) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

[4]  Counter-Plaintiffs argue that for an "apex official" to obtain a protective order, the official must submit an affidavit attesting that he has no knowledge of the claims at issue. In support of this argument, Counter-Plaintiffs rely on a 1998 article appearing in the Florida Bar Journal.  See Adam M. Moskowitz, Deposing Apex Officials in Florida; Shooting Straight for the Top, 72 Fla. Bar. J 10, 12 (December 1988).  For this proposition, however, the article cites only Texas and California state appellate decisions (and no Florida or federal decisions).  Although the better practice may be to submit a "no knowledge" affidavit, Counter-Plaintiffs have cited no federal cases requiring a high ranking government official to submit such an affidavit in support of a motion for protective order. Indeed, at least one federal district court has rejected an affidavit requirement.  See Hankins v. City of Philidelphia, No. 95-1449, 1996 WL 524334, at *2 n.2 (E.D. Pa. Sept. 12, 1996).

as the current Homestead City Manager, only the City of Homestead has standing to move for a protective order on behalf of Gretsas.   Counter-Plaintiffs are correct that generally a party does not have standing to challenge a subpoena served on a non-party, unless that challenging party has a personal right or privilege with respect to the subject matter of the information or materials sought.  Armor Screen Corp. v. Storm Catcher, Inc. No. 07-81091-Civ, 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008) (Vitunac, M.J.) (citing Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1079)); Stevenson v. Stanley Bostich, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (collecting cases).   Counter-Plaintiffs, however, are seeking to depose Gretsas as a former government official of the City of Fort Lauderdale, not as Homestead's City Manager.  The Court, therefore, finds that the City does have standing to bring the instant motion.  More significantly, Gretsas himself brings the Motion for Protective Order on his own behalf.[5]  Counter-Plaintiffs standing argument, therefore, is without merit.  The Court will now address the parties' substantive arguments.

Although no *per se* rule prohibits the depositions of high ranking government officials, courts have recognized that they should not be called to testify or be deposed about their reasons for taking official action, absent extraordinary circumstances.  See In Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007) ("[T]op executives should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action."); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993) ("In order to protect officials from constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony"; high

---

[5] Although the Motion is signed by counsel for the City, the signature line shows that Gretsas is also represented by the City's attorney.

4

ranking government officials "should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); <u>In re Office of Inspector General</u>, 933 F.2d 276, 278 (5th Cir. 1991) (<u>per curiam</u>) ([T]op executive department officials should not, absent extraordinary circumstances be called to testify regarding their reasons for taking official actions.") (quoting <u>Simplex Time Recorder Co. v. Sec. of Labor</u>, 766 F.2d 575, 586 (D.C. Cir. 1985)); <u>Dobson v. Vail</u>, No. C10-5233/KLS, 2011 WL 4404146, at *1 (W.D. Wash. Sept. 21, 2011) ("Courts have recognized that high-ranking public officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); <u>Coleman v. Schwarzenegger</u>, No. CIV-S-90-0520 LKK JFM P, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008) ("[T]he settled rule across the circuits is that absent extraordinary circumstances, high-ranking officials may not be subject to depositions or called to testify regarding their official actions.").

As one district court has explained: "Two reasons underlie the reluctance of courts to allow discovery of high-ranking officials.  The first is to protect the officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits.  The second is to protect the officials from unwarranted inquiries into their decision-making process."  <u>Schwarzenegger</u>,, 2008 WL 4300437, at *2. (internal citations omitted) (citing <u>United States v. Morgan</u>, 313 U.S. 409, 422 (1941) (indicating the practice of calling high ranking government officials as witnesses should be discouraged); <u>see also</u> <u>Bogan</u>, 489 F.3d at 423 ("This rule is based on the notion that '[h]igh ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.") (quoting <u>Kessler</u>, 985 F.2d at 314).

5

This rule has been extended to cover depositions of former high ranking officials. See, e.g., Dobson, 2011 WL 4404146, at *1; Thomas v. Cate, 715 F. Supp. 2d 1012, 1049-50 (E.D. Cal. 2010); United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 316-17 (D.N.J. 2009); United States v. Wal-Mart, No. CIV.A PJM-01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002).  As the court in Dobson recently explained: "Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation.  That interest survives leaving office."  2011 WL 4404146, at *1 (internal citations omitted).  "Courts have held that subjecting the decision-making processes of former high-ranking government officials 'to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service.'" Id. (quoting Wal-Mart, 2002 WL 562301, at *3).

Once a court determines that the government official is sufficiently high ranking to merit protection from giving a deposition,[6] the party seeking the deposition must demonstrate that:

> (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources.

---

[6] Counter-Plaintiffs do not contest that Gretsas, as a city manager, is and was such a high ranking government official.

Thomas, 715 F. Supp. 2d at 1048; see also Dobson, 2011 WL 4404146, at *2 (applying

same test); Bouno v. City of Newark, 249 F.R.D. 469, 470 (D.N.J. 2008) (applying same

test).  "Stated another way, the extraordinary circumstances test may be met when high-

ranking officials have direct personal factual information pertaining to material issues in an

action and the information to be gained is not available through any other sources."

Dobson, 2011 WL 4404146, at *2 (internal quotation marks omitted); see also Bogan, 489

F.3d at 423 ("Depositions of high ranking officials may be permitted where the official has

first hand knowledge related to the claim being litigated.  However, even in such cases,

discovery is permitted only where it is shown that other persons cannot provide the

necessary information.") (internal citations omitted).

    Counter-Plaintiffs first argue that where "the motives behind the corporate action are

at issue, an opposing party usually has to depose those officers who in fact approved and

administered the particular action."  Response at 8 (DE 175) (quoting Travelers Rental Co.,

Inc. v Ford Motor Co., 116 F.R.D. 140, 142 (D. Mass. 1987) (permitting the plaintiff to take

the deposition of the defendant's president and three other high level corporate officers

after the plaintiff had unsuccessfully attempted to obtain the information from lower level

employees.)).  They contend that Gretsas' "motivations and actions" concerning the

Northwest Community Redevelopment Agency (NW CRA) are at issue here, as were the

officers' motivations and actions in Travelers, and, therefore, the Court should permit them

to depose former City Manager Gretsas.  Travelers, however, did not involve high ranking

government officials; rather, it concerned high level corporate officers.   Clearly, federal

courts have held that high ranking government officials are not to be deposed as to their

official actions, absent extraordinary circumstances.  Indeed, part of the rationale behind

requiring greater scrutiny of efforts to depose high ranking government officials is to protect "the officials from unwarranted inquiries into their decision-making process." Schwarzenegger, 2008 WL 4300437, at *2.

Counter-Plaintiffs also suggest that Gretsas' presence at NW CRA meetings justifies taking his deposition, relying on Spreadmark, Inc. v. Federated Department Stores, Inc., 176 F.R.D. 116 (S.D.N.Y. 1997) (permitting the plaintiff to depose the corporate defendant's chief executive officer where the officer had participated in the conceptual discussions and/or negotiations of a contract that preceded the contract at issue; finding that the officer likely possessed relevant knowledge and noting that he had participated in 10-15 meetings concerning the concepts and/or negotiations). Counter-Plaintiffs additionally argue that as the former Executive Director of the NW CRA, City Manager Gretas has personal knowledge of the following:

> the requirements for and implementation of the CRA; the Implementation Plan; the Findings of Necessity; the Regional Activity Center; the City owned real estate (surplus) and its disposition; the protection, preservation, and conservation of affordable housing for low to moderate income persons, primarily owned by Blacks; the requirements of a Housing Element; the use and appropriation of funds such as bonds, HUD monies, and tax increment financing; the taking of properties through code enforcement, foreclosure, and demolition which [allegedly] caused a decrease in the affordable housing stock and increased the development of high end properties.

Response at 9 (DE 175).

However, Gretsas' mere presence at meetings and his (alleged) personal knowledge do not alone justify his deposition; Counter-Plaintiffs must also demonstrate "what efforts have been made to determine whether the information is otherwise available

and the extent to which their efforts failed to uncover such information." <u>Schwarzenegger</u>,
2008 WL 4300437, at *4.  Counter-Plaintiffs have not made a sufficient showing that they
have attempted to ascertain that the information sought is not available from other lower-
level employees and that the information cannot be obtained by less intrusive means.

Counter-Plaintiffs argue that they have attempted to obtain the information from
other lower level personnel – Alfred Battle, the Director of the NW CRA and Jonathon
Brown, the Director of Community Economic Division.  Counter-Plaintiffs summarily assert
that Battle and Brown "were unable to sufficiently provide the information necessary to
prosecute this case and referred [them] to the City for the information."  Response at 10
(DE 175).  They, however, have failed to identify the particular information that Battle and
Brown were (allegedly) unable to provide.  The Court has reviewed Battle's 152-page
deposition transcript (previously submitted by the City) (DE 167-1).  Almost without
exception, Battle answered fully the questions posed to him by Counter-Plaintiffs' counsel;
in only a few instances did Battle refer Counter-Plaintiffs to another (identified) individual
or department that could provide further information on a particular subject, neither of
whom were Gretsas.  More significantly, Counter-Plaintiffs have not yet completed Battle's
deposition, which is to be set in the near future.

With respect to Brown's deposition testimony, the City and City Manager Gretsas
state that although Brown "could not remember every detail, statistic or other empirical
data, as well as all of the [City's] historical information pertaining to affordable housing, at
no point in time did Brown suggest that [Gretsas] has additional, better, and/or unique
information or documents that he, Mr. Brown, could not provide."  Reply at 4 (DE 178).
They contend that "[t]o the contrary, Mr. Brown's deposition was substantially thorough

regarding [the City's] affordable housing programs, and regarding other programs for which he was questioned." Id.  Although Brown's deposition transcript is not yet available for the Court's review, the Court finds it unlikely that during seven hours of questioning, Brown was unable to provide any of the information that Counter-Plaintiffs seek from City Manager Gretsas.  Moreover, Counter-Plaintiffs never attempted to obtain the information sought through a Rule 30(b)(6) deposition of the City's representative.  Such a deposition which would have permitted the City to designate lower-level city personnel knowledgeable in the areas of information that Counter-Plaintiffs now seek to obtain from City Manager Gretsas.  The Court does not find that Counter-Plaintiffs' conclusory assertion that Battle and Brown were unable to provide the information they now seek from City Manager Gretas is sufficient to meet their burden of showing that the such information is (or was)[7] not available from other sources.

Counter-Plaintiffs additionally argue that the information sought from City Manager Gretsas is not available through less intrusive means.  In addition to deposing Battle and Brown, Counter-Plaintiffs argue that they sought from Battle (through a subpoena *duces tecum)* 184 categories of documents (spanning a 16 year period), "all of which are necessary for the proper prosecution of this case, and most of which this Honorable Court refused to allow from Battle."  Response at  10 (DE 175).  This Court did grant Battle's Motion for Protective Order, finding Counter-Plaintiffs' document request (attached to its subpoena *duces tecum*) was "unduly burdensome, oppressive, patently unreasonable, and grossly overbroad, both in time and scope."  January 9, 2012 Order at 5 (DE 142).

---

[7]  The Court notes that the (extended) March 1, 2012 discovery deadline has passed.

Additionally, the Court noted that subsequent to service of the document request, the District Court had dismissed all but 7 of Counter-Plaintiffs' 21 claims, with only 1 claim remaining against Battle.  The Court further noted that because the District Court had reset the trial date and had extended the discovery deadline, Counter-Plaintiffs would have "sufficient time to review the documents already produced [by Battle] and then, if necessary, serve on the parties **far** more narrowly-tailored and **far** more carefully-drafted Requests for Production (pursuant to Federal Rule of Civil Procedure 34) relating to the remaining claims only."  Id. (emphasis in original).  But Counter-Plaintiffs, never served on the City any interrogatories or requests for production of documents.[8]   The City and City Manager Gretsas argue that "the fact that COUNTER-PLAINTIFFS were unable to obtain 'all' of the 16-years worth of 184 categories of voluminous CITY-wide documents they sought through one subpoena, through no fault but their own, does not equate to justification for deposing CITY's two most high-ranking officials."  Reply at 3 (DE 178).  The Court agrees.

The Court is not persuaded that this case presents extraordinary circumstances such that Counter-Plaintiffs should be permitted to depose City Manager Gretsas.  The City

---

[8]   In their Reply (DE 178), the City informs the Court that instead of using the methods for obtaining discovery from a party provided by the Federal Rules of Civil Procedure (i.e., a Rule 34 request for production), Counter-Plaintiffs recently served on the City a subpoena *duces tecum,* which requests production of 111 categories of documents; the parties have apparently agreed to pare that number down to 52 categories.  Counter-Plaintiffs argue that the documents will only reflect the end-product or result of the planning and activities and that they need the testimony of witnesses "who can identify, pinpoint, narrow the documents so that they can be requested in a fashion that is allowable by this Honorable Court."  Response at 12 (DE 175).  They contend that Gretsas is one such individual.  Although Gretsas may be able to identify documents, the Court has no doubt that lower-level city personnel could also do so.

and City Manager Gretsas, therefore, have shown good cause for the issuance of a protective order. See Bouno, 249 F.R.D. at 470 ("Absent extraordinary circumstances, good cause exists to preclude the deposition of a high level government official because there is a public policy interest in ensuring that high level government officials are permitted to perform their official tasks without disruption or diversions.").

DONE AND ORDERED in Fort Lauderdale, Florida, this 7th day of March 2012.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record